843 So.2d 871 (2003)
Thomas PARKER, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-1013.
Supreme Court of Florida.
March 27, 2003.
*872 Charles J. Crist, Jr., Attorney General, Celia Terenzio, Bureau Chief, West Palm Beach, and Maria J. Patullo, Joseph A. Tringali, and Leslie T. Campbell, Assistant Attorneys General, West Palm Beach, FL, for Respondent.
*873 SHAW, Senior Justice.
We have for review Parker v. State, 780 So.2d 210 (Fla. 4th DCA 2001), wherein the district court expressly declared valid a state statute. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. We affirm.

I. FACTS
Parker was arrested June 27, 2000, and charged with aggravated fleeing and eluding, resisting arrest without violence, and driving with a suspended license. He posted a $2700 bond and was released. He subsequently was arrested on August 24, 2000, for possession of cocaine with intent to sell and possession of marijuana. He posted a $2500 bond and was released. At the status conference on the June 27 case, the State notified the court of the second arrest and asked the court to revoke Parker's bond in the first case. Defense counsel objected and the following colloquy took place:
MR. KIRSCH: I'm asking you to revoke his bond on this case.
MS. ESTRUMSA: Judge, I received absolutely no notice of this. I believe the State's required as your Honor is aware to give at least three hours notice so that I can prepare something.
THE COURT: Not withthe statutes. Reading the statute the Court can do it on its own based on reading it in chambers. I don't have to receive any motion; I don't have to receive any offer, just finding there is probable cause.
I'm finding there is probable cause for the new arrest. I have read the probable cause affidavit. The Court finds there is probable cause. The Court is revoking the bond. He can file any motion to set bond.
THE DEFENDANT: Your Honor, I won't be able to re-bond out.
THE COURT: You're being held on a no bond hold on the case once I revoke that bond.
THE DEFENDANT: What?
. . . .
MS. ESTRUMSA: Judge, at this time for the record I would object. The State has provided absolutely no notice prior to doing this ore tenus motion, has not filed any written motion.
They have not given me an opportunity to have any heads up about this revoking of bonds, nor am I able to provide a written motion myself.
At this time Mr. Parker has employment. He is going to lose his job if your Honor should revoke his bond. He has made it to today's court date. There is absolutely no reason to revoke his bond at this time other than the fact he picked up a new charge.
As your Honor knows he is presumed innocent of these charges until proven by the State that he is guilty beyond a reasonable doubt. I ask that you reconsider your revoking of the bond at this time, your Honor.
THE COURT: The reason why the bond is being revoked is because the court finds there is probable cause for the new arrest. The State gives the Court the authority to do that. That's what I'm doing. On this case the calendar call is November 9th. The trial date is November 13th.
Parker was remanded into custody without bond. He later filed a motion to reconsider the bond revocation, contending that section 903.0471, Florida Statutes (2000), is unconstitutional. The court on October 12 and 17, 2000, conducted hearings on the motion, held the statute constitutional, and denied the motion.[1] Parker *874 filed a petition for a writ of habeas corpus in the district court; the court denied the petition. Parker sought review before this Court.
The issue posed in the present case is whether section 903.0471, Florida Statutes (2000), is constitutional. At the hearing on October 17, 2000, the trial court heard argument of counsel concerning the constitutionality of section 903.0471 and declared the statute constitutional. No evidence was adduced and the trial court made no findings of fact. Its ruling thus constitutes a pure question of law, subject to de novo review.[2]

II. THE CONSTITUTIONAL AND STATUTORY SCHEMES
The presumption of innocence is a basic tenet of our criminal justice system and attaches to each person charged with a crime.[3] Article I, section 14, Florida Constitution, gives effect to this presumption. Prior to 1983, that section read as follows:
SECTION 14. Bail.Until adjudged guilty, every person charged with a crime or violation of municipal or county ordinance shall be entitled to release on reasonable bail with sufficient surety unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great.
Art. I, § 14, Fla. Const. (1968).
Effective January 1, 1983, the section was amended to broaden the group of persons who could be denied bail and later was modified in other ways:
SECTION 14. Pretrial release and detention.Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.

Art. I, § 14, Fla. Const. (emphasis added). To implement the 1983 amendment, the *875 Legislature enacted statutory sections 903.046[4] and 907.041,[5] which set forth criteria for bail determinations and pretrial release.

III. CHANGES IN THE STATUTORY SCHEME
Subsequent to the above constitutional amendment and statutory enactments, a conflict arose among Florida's district courts. The courts agreed that under the then-current statutory scheme a trial court could revoke bond when a defendant violated a condition of pretrial release, but the courts differed as to what should happen if the defendant then reapplied for pretrial release. The Third District Court of Appeal held that the matter fell squarely within the discretion of the court, whereas the Fourth District Court of Appeal held that the issue was governed by the provisions of section 907.041.[6] This Court, in order to consider the issue, granted review in Paul v. Jenne, 728 So.2d 1167 (Fla. 4th DCA 1999).
While Paul was pending, the Legislature addressed the issue by enacting several statutory provisions. First, the Legislature amended section 907.041(4) to read as follows:
(c) The court may order pretrial detention if it finds a substantial probability ... *876 that any of the following circumstances exists:
1. The defendant has previously violated conditions of release and that no further conditions of release are reasonably likely to assure the defendant's appearance at subsequent proceedings;
2. The defendant, with the intent to obstruct the judicial process, has threatened, intimidated, or injured any victim, potential witness, juror, or judicial officer, or has attempted or conspired to do so, and that no condition of release will reasonably prevent the obstruction of the judicial process;
3. The defendant is charged with trafficking in controlled substances as defined by s. 893.135, that there is a substantial probability that the defendant has committed the offense, and that no conditions of release will reasonably assure the defendant's appearance at subsequent criminal proceedings; or
4. The defendant is charged with DUI manslaughter, as defined by s. 316.193, and that there is a substantial probability that the defendant committed the crime and that the defendant poses a threat of harm to the community...
. . . .
5. The defendant poses the threat of harm to the community. The court may so conclude, if it finds that the defendant is presently charged with a dangerous crime, that there is a substantial probability that the defendant committed such crime, that the factual circumstances of the crime indicate a disregard for the safety of the community, and that there are no conditions of release reasonably sufficient to protect the community from the risk of physical harm to persons.
6. The defendant was on probation, parole, or other release pending completion of sentence or on pretrial release for a dangerous crime at the time the current offense was committed; or
7. The defendant has violated one or more conditions of pretrial release or bond for the offense currently before the court and the violation, in the discretion of the court, supports a finding that no conditions of release can reasonably protect the community from risk of physical harm to persons or assure the presence of the accused at trial.

§ 907.041(4), Fla. Stat. (2000) (emphasis added).
Second, the Legislature amended section 903.046 to read as follows in relevant part:
(2) When determining whether to release a defendant on bail or other conditions, and what that bail or those conditions may be, the court shall consider:
. . . .
(j) Whether there is probable cause to believe that the defendant committed a new crime while on pretrial release.

§ 903.046, Fla. Stat. (2000) (emphasis added).
And finally, the Legislature enacted section 903.0471, which provides as follows:
903.0471 Violation of condition of pretrial release.Notwithstanding s. 907.041, a court may, on its own motion, revoke pretrial release and order pretrial detention if the court finds probable cause to believe that the defendant committed a new crime while on pretrial release.
§ 903.0471, Fla. Stat. (2000).
This Court subsequently issued its decision in State v. Paul, 783 So.2d 1042 (Fla. 2001), holding that the above enactments did not apply retroactively and were inapplicable to Paul.[7] Unlike the situation in *877 Paul, however, the crimes in the present case took place after the effective dates of the above enactments and are governed by the enactments.

IV. THE CONSTITUTIONALITY OF SECTION 903.0471
Parker claims that section 903.0471 is unconstitutional for three reasons: it violates the plain language of article I, section 14, Florida Constitution; it violates substantive due process; and it violates procedural due process.

A. The Plain Language of Section 14

Parker's main claim is that section 903.0471 violates the plain language of article I, section 14, because it fails to require specific findings. We disagree. The district court below addressed this claim as follows:
Parker argues that section 903.0471 is unconstitutional as violating Article I, section 14 of the Florida Constitution which allows pretrial detention if "no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process." In Barns, however, Judge Gross explained in regard to the new legislation:
The statutory changes plainly implement the trial court's discretion to impose pretrial detention within the limits of Article I, Section 14 of the Florida Constitution, which affords the trial judge wide latitude in the decision to deny bond.... The legislative intent behind section 907.041 was not to narrow the breadth of the trial court's discretion under the state constitution, but to be coextensive with it.

Barns [v. State], 768 So.2d [529] at 532-33 [(Fla. 4th DCA 2000) ]. Barns, as we said earlier, involved a violation of a condition which was not a new crime, and thus was analyzed under 907.041, not section 903.0471. Our conclusion, however, that the trial judge's decision to deny pretrial release was still circumscribed by the Florida Constitution, would be equally applicable where the defendant committed a new crime and was being detained under section 903.0471. The statute does not, accordingly, violate the Constitution. As we noted earlier, the trial court not only found probable cause that Parker had committed the new crime while on pretrial release, but also found, consistent with Article I, section 14, that detention was necessary to protect the community from the risk of physical harm.
Parker, 780 So.2d at 212. The district court properly applied the law on this claim, as explained below.
As noted above, article I, section 14, was amended in 1983 to broaden the scope of persons who could be denied bail:
SECTION 14. Pretrial release and detention.Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release *878 on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.

Art. I, § 14, Fla. Const. (emphasis added). Contrary to Parker's claim, this section contains no requirement that a court articulate findings prior to denying pretrial release.
Subsequent to the above amendment, the Legislature in 1984 enacted section 903.047, which provided in relevant part:
903.047 Conditions of pretrial release.
(1) As a condition of pretrial release, whether such release is by surety bail bond or recognizance bond or in some other form, the court shall require that:

(a) The defendant refrain from criminal activity of any kind ....
§ 903.047, Fla. Stat. (Supp.1984) (emphasis added). This section reasonably may be viewed as implementing the third criterion for detention in amended article I, section 14 (i.e., where no conditions of release can "assure the integrity of the judicial process"), for the commission of a crime by a pretrial releasee unquestionably impugns the integrity of the judicial processthe defendant in effect is "thumbing his nose" at the court.
After section 903.047 was enacted, the Legislature later gave "teeth" to that section's proscription by enacting section 903.0471. As noted earlier, section 903.0471 provides:
903.0471 Violation of condition of pretrial release.
Notwithstanding s. 907.041, a court may, on its own motion, revoke pretrial release and order pretrial detention if the court finds probable cause to believe that the defendant committed a new crime while on pretrial release.
§ 903.0471, Fla. Stat. (2000). Under this provision, a court may summarily revoke pretrial release and order detention upon a finding of probable cause that the releasee committed a new crime. Contrary to violating the plain language of article I, section 14, this statutory section works hand-in-hand with section 14 to "assure the integrity of the judicial process."

B. Substantive Due Process

Parker contends that section 903.0471 violates substantive due process because the "probable cause" burden of proof is too low a burden on which to base pretrial detention. We disagree. The district court below addressed this claim thusly:
Parker also argues that section 903.0471 violates substantive due process because it authorizes a court to deny a second pretrial release upon finding probable cause that a defendant committed a new crime, which is less than the burden on the state when pretrial detention is sought under section 907.041. The cases cited by Parker, however, do not involve pretrial detention, but rather the standard of proof in criminal cases. In light of our conclusion that the statute is to be interpreted consistent with Article I, section 14 of the Florida Constitution, we do not agree with Parker that probable cause, which is a sufficient basis on which to make an arrest, is too low a standard to be constitutional.
Parker, 780 So.2d at 212-13. The district court properly applied the law relative to this claim, as explained below.
Various standards of proof are used in criminal proceedings wherein a defendant may be deprived of his or her liberty. For instance, "probable cause" is required for *879 an arrest;[8] "substantial probability" is required for an initial order of pretrial detention;[9] "in the discretion of the court" is required for denial of probation;[10] "in the conscience of the court" is required for the revocation of probation;[11] and "beyond a reasonable doubt" is required for a criminal conviction.[12]
The type of proceeding that is at issue in the present case, i.e., a revocation of pretrial release, is similar in nature to a revocation of probation, for both proceedings involve the revocation of a significant form of legal restraint. Similarly, the "probable cause" standard that is called for in section 903.0471 is no more onerous for a defendant than the "in the conscience of the court" standard that traditionally has been used in revocation of probation proceedings.[13] Further, in light of the fact that a court may initially order pretrial detention based on the "substantial probability" standard,[14] it is logical for a court to apply a less forgiving standard (i.e., "probable cause") when a detainee seeks release following a subsequent violation.

C. Procedural Due Process

Finally, Parker contends that section 903.0471 violates procedural due process because it does not require an adversarial hearing prior to revocation of pretrial release. Again, we disagree. The district court below addressed this claim thusly:
Nor do we agree with Parker that his procedural due process rights were violated because he did not receive the procedural safeguards contained in section 907.041, which is applicable to initial pretrial release hearings. Parker cites no authority for the proposition that he is entitled to more due process than is guaranteed by Article I, section 14 of the Florida Constitution. Having received those safeguards, his due process rights were not violated.
Parker, 780 So.2d at 213. The district court properly applied the law on this claim, as explained below.
The United States Supreme Court in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), held that a probable cause determination may be rendered by a judicial officer without an adversarial hearing:
These adversary safeguards are not essential for the probable cause determination required by the [constitution]. The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings. This issue can be determined reliably without an adversary hearing. The standard is *880 the same as that for an arrest. That standardprobable cause to believe that the suspect has committed a crime traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof....
The use of an informal procedure is justified not only by the lesser consequences of a probable cause determination but also by the nature of the determination itself. It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt. This is not to say that confrontation and cross-examination might not enhance the reliability of probable cause determinations in some cases. In most cases, however, their value would be too slight to justify holding, as a matter of constitutional principle, that these formalities and safeguards designed for trial must also be employed in making the Fourth Amendment determination of probable cause.
Gerstein, 420 U.S. at 120-22, 95 S.Ct. 854 (footnotes and citations omitted). In light of the fact that a Florida defendant is accorded a full adversarial hearing under section 907.041 upon his or her initial application for pretrial release, the requirements of article I, section 14, Florida Constitution, are satisfied by the dictates of section 903.0471 upon subsequent violation.

V. CONCLUSION
Based on the foregoing, we approve Parker v. State, 780 So.2d 210 (Fla. 4th DCA 2001), and hold that section 903.0471, Florida Statutes (2000), comports with article I, section 14, Florida Constitution, and with the Due Process Clauses of the state and federal constitutions as explained herein.
It is so ordered.
WELLS, LEWIS and QUINCE, JJ., and HARDING, Senior Justice, concur.
PARIENTE, J., concurs in result only with an opinion, in which ANSTEAD, C.J., concurs.
PARIENTE, J., concurring in result only.
Although I agree that the revocation of Parker's pretrial release did not violate his constitutional rights, I believe that the majority has gone further than necessary to reach this conclusion.
In this case, the trial court denied pretrial release under section 903.0471, Florida Statutes, finding probable cause to believe that Parker had committed a crime while on pretrial release, and also finding, in a subsequent hearing, "consistent with Article I, Section 14, that detention was necessary to protect the community from the risk of physical harm." Parker v. State, 780 So.2d 210, 212 (Fla. 4th DCA 2001). Based on the trial court's findings as to both probable cause and the existence of one of the criteria of article I, section 14, the Fourth District rejected Parker's constitutional challenges to section 903.0471. Regarding the claim that the statute violates article I, section 14, the Fourth District stated that the trial judge's decision to deny pretrial release under section 903.0471 is "circumscribed by the Florida Constitution." Id. The Fourth District rejected the assertion that the "probable cause" standard in the statute violates substantive due process "[i]n light of our conclusion that the statute is to be interpreted consistent with Article I, section 14." Id. at 213. Regarding Parker's procedural due process claim that he *881 did not receive adequate procedural safeguards, the Fourth District found that "[h]aving received those safeguards [in article I, section 14], his due process rights were not violated." Id. Thus, the Fourth District expressly declared section 903.0471 valid, and we exercised our discretion to review this decision under article V, section 3(b)(3) of the Florida Constitution.
The majority now approves the decision of the Fourth District, but, departing from the Fourth District's rationale, suggests that in order to deny pretrial release under section 903.0471, the trial court need not make findings consistent with the requirements of article I, section 14. The majority states: "Contrary to Parker's claim, [article I, section 14] contains no requirement that a court articulate findings prior to denying pretrial release." Majority op. at 878. The majority essentially concludes that a probable cause determination that a defendant has committed a new crime while on pretrial release equates to a finding that pretrial detention is necessary to assure the integrity of the judicial system, satisfying article I, section 14.
The conclusion that an article I, section 14 finding is not required is, in my view, not necessary to our assessment of the constitutionality of section 903.0471 in a case in which the trial court did in fact articulate an article I, section 14 finding. Had the trial court not made the additional finding in this case, I would be reluctant to conclude that a trial court's determination in a nonadversarial hearing that there is probable cause to believe that the accused committed a crime while on pretrial release comports with either article I, section 14, or due process of law. I discuss these concerns in greater detail below.

ARTICLE I, SECTION 14
As amended in 1983, article I, section 14 provides, in pertinent part: "If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained." The initial constitutional question posed by section 903.0471, as construed by the majority, is whether a finding of probable cause that the defendant has committed a new crime while on pretrial release, without any additional findings, satisfies the language in article I, section 14 authorizing pretrial detention of an accused if no conditions of release can assure the integrity of the judicial process.
This question should be answered in the negative, because section 903.0471 creates an irrebuttable presumption. I do not agree that the mere fact of an arrest for another crime, without regard for the nature of the crime or adequate testing of the level of proof, conclusively demonstrates that "no conditions of release can... assure the integrity of the judicial process." Contrary to the conclusion of the majority, commission of a new crime does not necessarily impugn the integrity of the judicial process and thereby obviate the need for an explicit finding to that effect in order to comport with article I, section 14. Under section 903.0471, the crime for which the defendant might be arrested could range from driving with a suspended license to possession of drug paraphernalia, misdemeanors that do not inherently undermine the integrity of the judicial process when allegedly committed by a person on pretrial release.
In some situations, the violation of a condition of release not involving criminal conduct impugns the integrity of the judicial process more than the commission of a new crime. For example, a defendant who *882 leaves the county, state, or country, contrary to the conditions of release, or one who makes contact with an alleged victim in violation of the mandatory condition of pretrial release under section 903.047(2), isin the majority's phrase"thumbing his nose" at the court to a greater degree than one arrested for a drug or traffic misdemeanor unrelated to the original charges. These violations may also put the community or persons at risk of physical harm or place the defendant's appearance at trial in doubt. However, section 903.0471, as construed by the majority, does not require a finding of any of the three constitutional criteria for pretrial detention.
I am concerned that this construction leaves the statute fraught with potential for abuse. The irrebuttable presumption that a second alleged offense impugns the integrity of the judicial process may result in the detention of a presumably innocent defendant until trial, often months in the future, even where the evidence supporting the second offense is weak. Illustrating this concern are the facts in State v. Paul, 783 So.2d 1042 (Fla.2001), in which we held that the defendant had been improperly detained based solely on the fact of the second arrest. Although the defendant in Paul was arrested for drug and firearm offenses, the State subsequently filed an information only on a misdemeanor cannabis charge and a "no information" on the remaining charges. Id. at 1043 n. 2.
Therefore, I believe that section 903.0471 as construed by the majority is on precarious constitutional footing under article I, section 14. To avoid unconstitutional application of this statute in future cases, I would require the trial court to not only make the probable cause determination explicitly required by the statute, but also to find that based on this finding, no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process.[15] Without a requirement of this latter finding, I cannot conclude that section 903.0471 comports with article I, section 14 under all conceivable circumstances.

SUBSTANTIVE DUE PROCESS
In the absence of a required finding of one of the article I, section 14 criteria, I am further concerned with the standard for determining whether a new crime has been committed. The majority observes that the "probable cause" standard in section 903.0471 is no higher than the traditional "in the conscience of the court" standard to establish a violation of probation,[16] *883 and that it is an appropriately less forgiving standard than "substantial probability," used for an initial order of pretrial detention under section 907.041(4)(c), Florida Statutes. See majority op. at 879. There are several problems with this analysis. Initially, revocation of pretrial detention and probation revocation are not analogous, in that the first occurs while the accused retains his presumption of innocence and the second takes place after that presumption has been removed via a plea or guilty verdict. We expressly recognized this distinction in Bernhardt v. State, 288 So.2d 490 (Fla.1974), in which we upheld a statute providing that a subsequent felony arrest of a person on probation is prima facie evidence of a violation of probation. As we explained in Bernhardt:
Probation revocation is an entirely different stage of the criminal-correctional process. The probationer has been convicted of a crime, subjected to the sanctions prescribed by law, and has been granted conditional release in order to serve the interests of society. The interests which the government may protect at this stage of the process are properly much broader than before trial. Since a conviction has been obtained, for example, it is hardly unreasonable to use incarceration pending the revocation hearing to protect society against the possible commission of additional crimes by the probationer. There is no presumption of innocence in the probation revocation process, at least not in the sense in which the phrase is used with reference to the criminal process. Hence, when a probationer is incarcerated pending a hearing, the balance of interests is not the same as that involved in confining an accused who has not been found guilty. This is a fundamental distinction from the pre-trial stage....
Id. at 498 (quoting In re Whitney, 421 F.2d 337, 338 (1st Cir.1970)).
Next, in stating that it is logical to apply a less forgiving standard than the "substantial probability" standard contained in section 907.041(4)(c), the majority does not identify several important distinctions between that statute and section 903.0471. First, section 907.041(4)(c) links the "substantial probability" standard to the "defendant's past and present patterns of behavior," and requires evaluation of the criteria for bail determination in section 903.046, which include the likelihood of appearance in future proceedings and unreasonable danger to the community. Second, all but one of the subsections in section 907.041(4)(c) require findings consistent with article I, section 14 concerning the prospects for appearance at trial, threat of harm to the community or obstruction of the judicial process.[17]
*884 In comparison to the "comprehensive and specific framework" of section 907.041, see Paul, 783 So.2d at 1052, the probable cause standard of section 903.0471 is tied only to the commission of an offense while on pretrial release. Section 903.0471 thus makes a novel use of the venerable concept of probable cause. Probable cause has been employed in American jurisprudence to justify Fourth Amendment searches and seizures (including detentions), but has not been utilized to revoke pretrial release, to which a defendant has a constitutional right under article I, section 14, solely on the possibility that the accused has committed another crime. See Gerstein v. Pugh, 420 U.S. 103, 122, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (discussing "Fourth Amendment determination of probable cause" in the context of a determination of grounds to detain). Accordingly, I cannot conclude that the "probable cause" standard, rather than the substantial probability standard used in section 907.041(4)(c), comports with the requirements of substantive due process for denial of the constitutional right to pretrial release on reasonable conditions.

PROCEDURAL DUE PROCESS
As stated by the majority, Gerstein does not require an adversarial hearing for a probable cause determination. See majority op. at 879-80. However, this holding applies only to the initial determination of the validity of a detention under the Fourth Amendment. The Supreme Court in Gerstein observed that the sole issue in an initial probable cause hearing is "whether there is probable cause for detaining the arrested person pending further proceedings," which, the Court concluded, "can be determined reliably without an adversary hearing." 420 U.S. at 120, 95 S.Ct. 854. Article I, section 14 brings additional considerations to bear on the complete denial of bail, triggering the need for an adversarial hearing. The absence of an adversarial hearing makes the probable cause determination under section 903.0471 an irrebuttable presumption that the article I, section 14 criteria for pretrial detention are satisfied, resulting in an indefinite deprivation of liberty and offending due process. Cf. Sandstrom v. Montana, 442 U.S. 510, 523, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (conclusive presumption would conflict with overriding presumption of innocence).

CONCLUSION
Although I have deep reservations as to whether section 903.0471 as construed by the majority comports with article I, section 14 of the Florida Constitution or affords procedural or substantive due process, I conclude that the provision was not unconstitutionally applied to Parker. In this case, the lower courts applied section 903.0471 as if the article I, section 14 findings were required. Additionally, the October 12 and 17, 2000, proceedings on Parker's motion to reconsider the bond revocation were in effect an adversarial hearing on the statutory and constitutional criteria, satisfying procedural due process. Finally, because the trial court also made the finding required by article I, section 14 that no conditions of release could protect the community from harm, I cannot conclude that the use of the constitutionally suspect "probable cause" standard for denial of the right to pretrial release resulted in a prejudicial denial of substantive due process. Accordingly, I join in the majority's *885 approval of the Fourth District decision, but do so based on the reasoning of the Fourth District rather than that of the majority of this Court.
ANSTEAD, C.J., concurs.
NOTES
[1] At the October 12 hearing, the assistant state attorney noted that Parker's August 24 arrest netted thirty-five to forty-five rocks of crack cocaine and that Parker had numerous prior convictions. In denying the motion to reconsider the revocation of bond, the court ruled as follows:

I have considered his prior record of convictions. There is no evidence as to failures to appear at court, and I have also considered the nature and probability of danger that the Defendant's release poses to the community. Including the fact that I have read the Probable Cause Affidavit.
I find that there was probable cause for the new arrest even as recent as last night. This gentleman, Mr. Parker, according to the Probable Cause Affidavit, he ran two stop signs. Unfortunately, examples of thatas of last night I think in Broward County a little boy was killed just under the same incidents or the same similar facts, but in any event his failureand the last item is the Court has also considered the fact that he was on bond in another case when he was arrested for this matter.
The motion to set bond is denied on Mr. Parker, and I know that you have arguments that you want to put on the record with Ms. Cuddihy. When she comes in we'll take care of that if we still have time.
[2] See, e.g., State v. Glatzmayer, 789 So.2d 297, 301-02 n. 7 (Fla.2001) ("If the ruling consists of a pure question of law, the ruling is subject to de novo review.").
[3] See, e.g., Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 39 L.Ed. 481 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.").
[4] This section, entitled "Purpose of and criteria for bail determination," provided in relevant part:

(2) When determining whether to release a defendant on bail or other conditions, and what that bail or those conditions may be, the court may consider:
(a) The nature and circumstances of the offense charged.
(b) The weight of the evidence against the defendant.
(c) The defendant's family ties, length of residence in the community, his employment history, his financial resources, and his mental condition.
(d) The defendant's past and present conduct, including any record of convictions, previous flight to avoid prosecution, or failure to appear at court proceedings.
(e) The nature and probability of danger which the defendant's release poses to the community.
(f) The source of funds used to post bail.
(g) Whether the defendant is already on release pending resolution of another criminal proceeding or on probation, parole, or other release pending completion of a sentence.
(h) Any other facts the court considers relevant.
§ 903.046, Fla. Stat. (Supp.1982).
[5] This section, entitled "Pretrial detention and release," provided in relevant part:

(b) The court may order pretrial detention if it finds a substantial probability ... that:
1. The defendant has previously violated conditions of release and that no further conditions of release are reasonably likely to assure the defendant's appearance at subsequent proceedings;
2. The defendant, with the intent to obstruct the judicial process, has threatened, intimidated, or injured any victim, potential witness, juror, or judicial officer, or has attempted or conspired to do so, and that no condition of release will reasonably prevent the obstruction of the judicial process;
3. The defendant is charged with trafficking in controlled substances as defined by s. 893.135, that there is a substantial probability that the defendant has committed the offense, and that no conditions of release will reasonably assure the defendant's appearance at subsequent criminal proceedings; or
4. The defendant poses the threat of harm to the community. The court may so conclude if it finds that the defendant is presently charged with a dangerous crime, that there is a substantial probability that the defendant committed such crime, that the factual circumstances of the crime indicate a disregard for the safety of the community, and that there are no conditions of release reasonably sufficient to protect the community from the risk of physical harm to persons.
§ 907.041(4), Fla. Stat. (Supp.1982).
[6] See State v. Paul, 783 So.2d 1042, 1044-45 (Fla.2001).
[7] This Court in State v. Paul, 783 So.2d 1042 (Fla.2001), stated as follows:

We agree with the reasoning of [the Fourth District in] Paul. The Florida Constitution guarantees the right to bail with limited exceptions, and in accordance with this guaranty, the Legislature has created a comprehensive and carefully crafted scheme for setting forth the circumstances under which a defendant may be held in pretrial detention. Accordingly, although the breach of a bond condition provides the basis for revocation of the original bond, the trial court's discretion to deny a subsequent application for new bond is limited by the terms of [section 907.041].
Paul, 783 So.2d at 1051 (footnote omitted).
[8] See, e.g., § 901.15(6), Fla. Stat. (2000) ("A law enforcement officer may arrest a person without a warrant when ... [t]here is probable cause to believe that the person has committed a criminal act....").
[9] See § 907.041(4)(c), Fla. Stat. (2000) ("The court may order pretrial detention if it finds a substantial probability ... that any of the following circumstances exists....").
[10] See, e.g., Bernhardt v. State, 288 So.2d 490, 494 (Fla.1974) ("Initially, we must remark that the grant of probation rests within the broad discretion of the trial judge....").
[11] See, e.g., Bernhardt, 288 So.2d at 495 ("[T]he evidence upon which to predicate a revocation [of probation] introduced at the hearing must be sufficient to satisfy the conscience of the court that a condition of probation has been violated.").
[12] See, e.g., Nixon v. Singletary, 758 So.2d 618, 621 (Fla.2000) ("[T]he Due Process Clause ... protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").
[13] See, e.g., Bernhardt v. State, 288 So.2d at 495.
[14] See § 907.041(4)(c), Fla. Stat. (2000).
[15] This Court has previously adopted similar prophylactic measures to ensure that a statute is constitutionally applied. See, e.g., State v. Townsend, 635 So.2d 949, 957 (Fla.1994) (to clarify possible inconsistencies between statute and United States Supreme Court precedent, initial determination of reliability of child abuse hearsay statement under section 90.803(23), Florida Statutes, must be made without regard to corroborating circumstances); Dep't of Law Enforcement v. Real Property, 588 So.2d 957, 968 (Fla.1991) (civil forfeiture statute containing "multitude of procedural deficiencies" construed to comport with requirements of due process of law).
[16] As a collateral matter, I question the reference to the "conscience of the court" standard for evaluating alleged probation violations. In our recent decision in State v. Carter, 835 So.2d 259 (Fla.2002), this Court stated:

Trial courts must consider each violation on a case-by-case basis for a determination of whether, under the facts and circumstances, a particular violation is willful and substantial and is supported by the greater weight of the evidence....
. . . .
... The trial court has broad discretion to determine whether there has been a willful and substantial violation of a term of probation and whether such a violation has been demonstrated by the greater weight of the evidence. See Van Wagner v. State, 677 So.2d 314 (Fla. 1st DCA 1996); Harris v. State, 610 So.2d 36 (Fla. 2d DCA 1992).
Id. at 261-62. As suggested by the citation to the First and Second District decisions, our repeated reference to the "greater weight of the evidence" and "willful and substantial" standards in Carter is consistent with the bulk of recent precedent in the district courts reviewing probation revocations. See also Tobias v. State, 828 So.2d 1066, 1068 (Fla. 4th DCA 2002); Lane v. State, 761 So.2d 476, 477 (Fla. 3d DCA 2000); Thomas v. State, 760 So.2d 1138, 1139 (Fla. 5th DCA 2000). These standards are more reliable gauges both for the trial court's determination and appellate review than the less precise "conscience of the court" language of Bernhardt v. State, 288 So.2d 490, 495 (Fla.1974).
[17] The exception is contained in section 907.041(4)(c)6., Florida Statutes, which authorizes pretrial detention if: "The defendant was on probation, parole, or other release pending completion of sentence or on pretrial release for a dangerous crime at the time the current offense was committed...." This Court has not been called upon to determine the validity of this subsection.